UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Ben's Auto Body, Inc.,
     Plaintiff

     v.                          Civil No. 08-cv-207-SM
                                    Opinion No. 2008 DNH 208
Ben Teitelbaum and
Patricia A. Kafka,
     Defendants

## O R D E R

In April of 2008, Ben's Auto Body, Inc. filed a five-count writ of summons in Rockingham County (New Hampshire) Superior Court against defendants Ben Teitelbaum and Patricia Kafka, both of whom are residents of Maine.  Defendants then removed the proceeding, invoking this court's diversity subject matter jurisdiction.  See 28 U.S.C. §§ 1332, 1441.  They now move to dismiss each of plaintiff's claims, asserting that none states a viable cause of action.  See Fed. R. Civ. P. 12(b)(6).  Plaintiff objects.

### Standard of Review

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must "accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor and determine whether the complaint, so read, sets forth facts sufficient to justify

recovery on any cognizable theory." <u>Martin v. Applied Cellular Tech.</u>, 284 F.3d 1, 6 (1st Cir. 2002).  Dismissal is appropriate only if "it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." <u>Langadinos v. American Airlines, Inc.</u>, 199 F.3d 68, 69 (1st Cir. 2000).  <u>See also</u> <u>Gorski v. N.H. Dep't of Corr.</u>, 290 F.3d 466, 472 (1st Cir. 2002).  Notwithstanding this deferential standard of review, however, the court need not accept as true a plaintiff's "bald assertions" or conclusions of law.  <u>Resolution Trust Corp. v. Driscoll</u>, 985 F.2d 44, 48 (1st Cir. 1993)  <u>See also</u> <u>Chongris v. Board of Appeals</u>, 811 F.2d 36, 37 (1st Cir. 1987).

## Background

Assuming the allegations set forth in plaintiff's complaint are true, the pertinent facts are as follows.  In March of 2008, Sheila Orr brought her vehicle to plaintiff's shop for repairs.  She then filed a claim under her automobile insurance policy, which had been issued by AAA Insurance.  Defendants, both of whom are employed by AAA Insurance, were assigned to handle the claim.  Patricia Kafka is an insurance adjuster and Ben Teitelbaum is an appraiser supervisor.

Plaintiff asserts that the defendants (without specifying which particular defendant) "stated to Ms. Orr that the Plaintiff

was overcharging for the repairs by some $850 in labor costs and
that Ms. Orr must take her vehicle to another repair shop, namely
George's Auto Body of Portsmouth, New Hampshire" – an automobile
repair facility with which AAA allegedly had an agreement "for
the repair of motor vehicles at a reduced rate."  Complaint at
paras. 6 and 9.  Ms. Orr reportedly told defendants that
plaintiff had already begun making the repairs to her car and she
wanted plaintiff to complete them.  Defendants allegedly
responded by informing Ms. Orr that she "would have to pay the
difference out of her own pocket if she did not take the vehicle
to George's Auto Body."  <u>Id</u>. at para. 7.  In the end, plaintiff
says "the disputed difference was less than $200."  <u>Id</u>. at para.
8.

     Subsequently, plaintiff filed this action advancing five
claims against the two named employees of AAA Insurance: unfair
insurance trade practices, in violation of N.H. Rev. Stat. Ann.
("RSA") ch. 417 (count one); intentional interference with
contractual relations (count two); defamation (count three);
violations of New Hampshire's Consumer Protection Act, RSA ch.
358–A (count four); and violations of New Hampshire's Anti–trust
Act, RSA ch. 356 (count five).  As noted above, defendants move
to dismiss each of plaintiff's claims for failure to state a
viable cause of action.

**Discussion**

There are four critical allegations in plaintiff's brief complaint that are central to each of plaintiff's causes of action. It is, then, probably appropriate to set them out verbatim. They are as follows:

> On or about March 17, 2008, the Defendants stated to Ms. Orr that the Plaintiff was overcharging for the repairs by some $850 in labor costs and that Ms. Orr must take her vehicle to another repair shop, namely George's Auto Body of Portsmouth, New Hampshire.
>
> Ms. Orr Protested that she wanted the Plaintiff to repair her vehicle and that the work had already begun; however, the Defendants stated that Ms. Orr would have to pay the difference out of her own pocket if she did not take the vehicle to George's Auto Body.
>
> In truth, the disputed difference was less than $200, and was resolved by the Plaintiff.
>
> Upon information and belief, AAA Insurance [defendants' employer] has entered into an agreement with George's Auto Body for the repair of motor vehicles at a reduced rate.

Complaint at paras. 6-9.

I.   Count One – Unfair Insurance Practices.

In count one of its complaint, plaintiff asserts that defendants engaged in unfair insurance trade practices, in violation of RSA ch. 417, "by making untrue and disparaging statements about Plaintiff, including but not limited to statements indicating that Plaintiff overcharges for repairs, in

order to coerce Ms. Orr to use an automobile repair shop other than Plaintiff." Complaint at para. 14. Under limited and very specific circumstances, RSA ch. 417 provides "consumers" with a private right of action against "suppliers" of insurance who have caused them harm. See RSA 417:8 (defining "consumer" and "supplier") and RSA 417:19 (establishing a limited private right of action for consumers). Importantly, however, plaintiff is not a "consumer," as that term is defined in the act. Plaintiff concedes as much.

Acknowledging that it lacks any express statutory cause of action against defendants, plaintiff asserts that RSA ch. 417 provides it with an implied private right of action. But, plaintiff has failed to point to any language in the statute itself or its legislative history suggesting that the legislature intended to create such an implied right of action. See generally Marquay v. Eno, 139 N.H. 708, 714–16 (1995). Moreover, in a similar case filed by plaintiff against a different defendant, this court (Barbadoro, J.) has expressly rejected plaintiff's assertion that RSA ch. 417 creates an implied private right of action.

> Plaintiff bases Count I and II of its complaint on
> alleged violations of N.H. Rev. Stat. Ann. § 417:3.
> While the New Hampshire legislature has authorized
> consumers to recover damages for violations of § 417:3
> in certain circumstances, it did not expressly

authorize other private actors to recover damages. Nor
has the plaintiff pointed to any evidence that the
legislature intended to authorize such actions by
implication. Neither the New Hampshire Constitution
nor New Hampshire common law authorizes implied private
rights of action under such circumstances.

Ben's Auto Body, Inc. v. Progressive Alliances Ins. Agency, Civ.

no. 07-cv-417-PB (D.N.H. April 24, 2008) (citation omitted).


Count one of plaintiff's complaint fails to state a viable
cause of action.


II.  Count Two – Intentional Interference with
     Contractual Relations.

Next, plaintiff asserts that defendants intentionally and
improperly interfered with its ongoing economic relationship with
Ms. Orr by making false and disparaging statements designed to
induce Ms. Orr to end her business relationship with plaintiff.
Moreover, says plaintiff, defendants' wrongful conduct likely
caused it to lose "numerous other customers it would have had but
for the intentional, illegal and improper conduct of Defendants."
Complaint at para. 21.


Count two of plaintiff's complaint is ambiguous and it is
unclear precisely what cause of action it is advancing, since it
not only addresses plaintiff's contractual relationship with Ms.
Orr, but also claims that plaintiff may have lost other (unknown)

6

customers as a result of defendants' conduct.  As defendants have
noted, "Plaintiff's claim for tortious interference with business
relationships resembles two torts recognized in New Hampshire:
tortious [or intentional] interference with contractual
relations, and intentional interference with a prospective
contractual relationship."  Defendants' memorandum (document no.
4-2) at 7 (citations omitted).  That ambiguity was, however,
resolved when, in its objection to defendants' motion to dismiss,
plaintiff clearly stated that it is advancing a claim for
"intentional interference with contractual relations."
Plaintiff's memorandum (document no. 7-2) at 5.

     To state a viable claim for intentional interference with
contractual relations, plaintiff must allege that it had a
contractual relationship with Ms. Orr; that the defendants were
aware of that contractual relationship; that defendants
wrongfully induced Ms. Orr to breach her agreement with the
plaintiff; and that any damages claimed were proximately caused
by defendants' interference with that relationship.  <u>See</u> <u>Barrows
v. Boles</u>, 141 N.H. 382, 392-93 (1996); <u>Roberts v. General Motors
Corp.</u>, 138 N.H. 532, 539 (1994); <u>Montrone v. Maxfield</u>, 122 N.H.
724, 726 (1982).  In support of their motion to dismiss,
defendants assert that plaintiff has failed to adequately allege:
(1) that they wrongfully induced Ms. Orr to breach her agreement

with plaintiff or that they "improperly" interfered with plaintiff's business relationship with Ms. Orr in any way; or (2) that defendants' wrongful conduct proximately caused plaintiff to suffer damages that are properly recoverable under that cause of action.

Even viewing the factual allegations set forth in the complaint in the light most favorable to plaintiff and extending it the full benefit of liberal pleading rules, the court is still compelled to conclude that the complaint fails to state a viable cause of action for intentional interference with contractual relations.  Among other deficiencies, the complaint fails to allege that, as a proximate result of defendants' allegedly improper conduct, Ms. Orr breached the agreement she had with plaintiff to perform repairs to her vehicle.  To the contrary, the complaint affirmatively acknowledges that Ms. Orr ignored defendants' suggestion that she take her vehicle to a different repair facility and, instead, fulfilled her contractual obligation to plaintiff by paying for the necessary repairs, in full.  Consequently, count two of the complaint fails to adequately allege each of the essential elements of a viable cause of action for intentional interference with contractual relations.

III. <u>Count Three – Defamation</u>.

   Next, the complaint asserts that defendants "made false and defamatory statements concerning Plaintiff to Ms. Orr, including but not limited to statements indicating that Plaintiff overcharges for repairs and charges for unnecessary labor." Complaint at para. 25.  In response, defendants say the specific statement attributed to them – that plaintiff was overcharging Ms. Orr for the repairs by $850 in labor costs – constitutes an expression of opinion and, therefore, is not actionable.  <u>See, e.g.</u>, <u>Thomas v. Telegraph Publishing Co.</u>, 155 N.H. 314, 338–39 (2007); <u>Nash v. Keene Publishing Corp.</u>, 127 N.H. 214, 219 (1985). Defendants also assert that the statement constitutes a privileged communication between an insurance company and its insured, specifically authorized by New Hampshire's statute governing insurance trade practices.  That statute provides that:

> Nothing shall prohibit any insurance company, agent or adjuster from providing to such insured person or entity the name of an automobile glass company or automobile repair company with which arrangements may have been made with respect to automobile glass or repair prices or services.  If a name is provided, there must be disclosure by the insurance company, agent or adjuster to the insured person or entity that any other automobile glass company or automobile repair company or location may be used at the discretion of the insured person or entity.  However, the insurer may limit payment for such work based on the fair and reasonable price in the area by repair shops or facilities providing similar services with the usual

and customary guarantees as to materials and
workmanship.

RSA 417:4 XX(c).


As a preliminary matter, the court must determine "whether
the language in question could reasonably have been read to
defame the plaintiff." Duchesnaye v. Munro Enterprises, 125 N.H.
244, 252–53 (1984). See also Thomson v. Cash, 119 N.H. 371, 374
(1979) ("The threshold question for this court is whether the
published words are reasonably capable of conveying the
defamatory meaning or innuendo ascribed to them by the
plaintiff.") (citation omitted). Then, "[o]nce the court has
made this determination about possible meaning and application, a
jury or court as finder of fact must determine whether the
language was actually communicated and understood in the possible
defamatory sense." Duchesnaye, 125 N.H. at 253.


Here, the operative word in question – "overcharge" – is
capable of several, subtly different meanings. On one hand, a
reasonable audience might plausibly conclude that defendants were
merely pointing out that plaintiff was charging more than his
competitors for comparable services – a fact borne out by the
complaint's acknowledgment that plaintiff apparently charged Ms.
Orr approximately $200 more for the repairs than the price AAA

Insurance had negotiated with George's Auto Body.  On the other hand, however, the word "overcharge" can carry a distinctly negative connotation, suggesting that the actor is behaving improperly, unfairly, unscrupulously, and perhaps even illegally. See, e.g., Dodson v. Morgan Stanley DW, Inc., 2007 WL 3348437 at *14 (W.D. Wash. Nov. 8, 2007) (holding that defendant's statement that plaintiff was "overcharging" her clients could "reasonably be interpreted as implying that Plaintiff's charging practices were improper and possibly in violation of . . . applicable law.").  Consequently, depending upon the context in which it was used – an issue that can be explored in discovery and perhaps resolved on summary judgment – the word "overcharge" is capable of defamatory meaning.

It naturally follows, then, that the court cannot conclude that, as a matter of law, the statement attributed to defendants constitutes non-actionable opinion.  See, e.g., Pease v. Telegraph Publishing Co., 121 N.H. 62, 65 (1981) ("Whether an allegedly libelous statement is an opinion or an assertion of fact is a matter of law to be determined by the trial court in the first instance.  Where, however, an average reader could reasonably understand the statement in either sense, the issue may properly be left to the jury's determination.") (citations omitted).  Depending upon the context in which that statement was

11

made, it is possible that it could have been understood to imply the existence of defamatory facts as the basis for the opinion (e.g., that defendants were aware of facts that prompted them to conclude that plaintiff was dishonestly, unscrupulously, and/or unlawfully charging customers more than they were entitled to charge).  See, e.g., Thomas, 155 N.H. at 338–39; Nash, 127 N.H. at 219.

Finally, while RSA ch. 417 authorizes insurance companies to inform their insureds of the existence of other repair facilities, with whom arrangements have been made to complete all necessary repairs within the amount allotted for such repairs by the insurer, that statute plainly does not authorize insurers to utter defamatory statements in the context of such communications.

Parenthetically, the court notes that, for purposes of ruling on defendants' motion to dismiss, it has assumed that one (or perhaps even both) of the defendants actually used the word "overcharge" when speaking with Ms. Orr.  The complaint is not clear on that point.  For example, it does not specifically attribute the statement to either particular defendant, nor does it purport to quote the precise language that the defendant(s) used.

12

IV.   <u>Count Four – Violation of the Consumer Protection Act</u>.

     Plaintiff's complaint fails to state a viable claim under

New Hampshire's Consumer Protection Act, RSA ch. 358-A, because

that statute exempts from its provisions "[t]rade or commerce

that is subject to the jurisdiction of the . . . insurance

commissioner."  RSA 358-A:3 I.  But, says plaintiff, its claim

under the Consumer Protection Act should not be precluded because

the statute governing insurance practices does not give it an

adequate remedy (or any remedy at all).  That argument has,

however, been addressed and rejected by the New Hampshire Supreme

Court, which held:

> The statutory exemption to the [Consumer Protection]
> Act, however, does not require that remedies available
> to aggrieved consumers under qualifying regulatory
> schemes be <u>identical</u> to those provided in the Act.
> Rather, it is sufficient that the regulatory scheme
> protects consumers from fraud and deception in the
> marketplace in a manner calculated to avoid the same
> ills as RSA chapter 358-A.

<u>Averill v. Cox</u>, 145 N.H. 328, 334 (2000) (citations and internal

punctuation omitted) (emphasis in original).


V.   <u>Count Five – Restraint of Trade</u>.

     Finally, plaintiff's complaint fails to state a viable claim

against defendants for restraint of trade, in violation of New

Hampshire's Anti-trust statute, RSA ch. 356.  Among other things,

that statute provides that "[a]ctivities of and arrangements

between persons shall be exempt from this chapter if such are
permitted, authorized, approved, required, or regulated by a
regulatory body acting under a federal or state statutory scheme
or otherwise actively supervised by a regulatory agency."  RSA
356:8-a.  Plainly, the activities of the defendants and their
employer, AAA Insurance, are supervised and regulated by the New
Hampshire Insurance Commissioner.  Moreover, as noted above, the
statute governing insurance practices in New Hampshire
specifically contemplates that insurance companies may engage in
the very conduct of which plaintiff complains – that is, entering
into arrangements with automotive repair facilities establishing
the amounts that such facilities will charge when services are
provided to one of the company's insureds.  See RSA 417:4 XX(c).

## Conclusion

For the foregoing reasons, as well as those set forth in
defendants' memoranda (documents no. 4-2 and 9), plaintiff's
complaint fails to state viable causes of action for violations
of RSA ch. 417 (count one), intentional interference with
contractual relations (count two), violation of New Hampshire's
Consumer Protection Act (count four), and violation of New
Hampshire's anti-trust statute (count five).  Count three of
plaintiff's complaint, however, is minimally sufficient to state

a viable claim for defamation and survive defendants' motion to dismiss.

Defendants' motion to dismiss (document no. 4) is, then, granted in part and denied in part.  Counts 1, 2, 4, and 5 of plaintiff's complaint are dismissed for failure to state viable causes of action.  In all other respects, defendants' motion is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

December 15, 2008

cc:  Earl L. Kalil, Jr., Esq.
     Christopher E. Ratte, Esq.
     Daniel E. Will, Esq.

15