UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Ben's Auto Body, Inc.,
    Plaintiff

    v.                                    Civil No. 08-cv-207-SM
                                                    Opinion No. 2009 DNH 060
Ben Teitelbaum and
Patricia A. Kafka,
    Defendants

**O R D E R**

Given this court's order dated December 15, 2008, this case now consists of a single claim of defamation. In Count III of its complaint, Ben's Auto Body, Inc. ("Ben's") asserts that defendants defamed it by telling Shiela Orr that Ben's "overcharged for repairs and charges for unnecessary repairs." (Compl. ¶ 25.)[1] Defendants move for summary judgment on plaintiff's defamation claim.

**Standard of Review**

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party

---

[1] The complaint also includes allegations that: (1) "Defendants stated to Ms. Orr that Ben's was overcharging for the repairs by some $850 in labor costs and that Ms. Orr must take her vehicle to another repair shop, namely George's Auto Body. . . ." (Comp. ¶ 6); and (2) "The Defendants stated that Ms. Orr would have to pay the difference out of her own pocket if she did not take the vehicle to George's Auto Body" (Compl. ¶ 7).

is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). When ruling on a party's motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. See Lee-Crespo v. Schering-Plough Del Caribe Inc., 354 F.3d 34, 37 (1st Cir. 2003) (citing Rivera v. P.R. Aqueduct & Sewers Auth., 331 F.3d 183, 185 (1st Cir. 2003)). In this context, "a fact is a 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

**Background**

On March 10, 2008, Sheila Orr contacted her insurer, AAA Insurance ("AAA") to file a claim for damage resulting from an automobile accident. (Kafka Aff. ¶¶ 2, 3.) Patricia Kafka was assigned to handle Orr's claim. Orr told Kafka she intended bring her vehicle to Ben's for repairs. (Orr Aff. ¶ 2; Kafka Aff. ¶ 3.) Kafka told Orr "that was fine." Id. Ben's conducted an appraisal to estimate the cost to repair Orr's vehicle. (Berounsky Aff. ¶ 3.) Kafka also sent an independent appraiser, Greg Shelton of Seacoast Appraisal ("Seacoast"), to inspect Orr's

vehicle.  (Orr Aff. ¶ 3; Kafka Aff. ¶¶ 3, 7.)  Ben's estimate was higher than Seacoast's estimate by two hundred dollars.  (Berounsky Aff. ¶ 6.)

On March 18, 2008, Kafka spoke with Ben Teitelbaum, an AAA supervisor, about Orr's claim.  (Kafka Aff. ¶ 5; Teitelbaum Aff. ¶ 9.)  Teitelbaum had reviewed the damage appraisals prepared by Seacoast and Ben's.  Teitelbaum told Kafka that Ben's did not agree with the damage appraisal prepared by Seacoast.  Kafka called Orr to explain the damage appraisal prepared by Seacoast (Kafka Aff. ¶ 7), and also notified Orr there was a difference between Ben's estimate and Seacoast's estimate (Kafka Aff. ¶ 7).  Further, she told Orr that if AAA and Ben's could not agree on the repair costs, she would be personally responsible for the difference between Seacoast's estimate and Ben's bill.  (Kafka Aff. ¶ 7.)  Kafka then asked Orr whether she was interested in moving her vehicle to another repair shop, George's Auto Body ("George's").  (Kafka Aff. ¶ 7.)  Orr agreed to have George's do the work, understanding that it was her decision whether to leave her vehicle at Ben's or take it to George's.  (Orr Aff. ¶ 3.)

After speaking with Orr, Kafka contacted Ben's to determine the cost of moving Orr's vehicle to George's.  (Kafka Aff. ¶ 8.)  Minutes later, Orr called Kafka and told her of a phone call she

received from Mike Berounsky, President of Ben's.  (Orr Aff. ¶¶ 5, 6; Kafka Aff. ¶ 9.)  Berounsky told Orr that he would not release her vehicle until AAA paid him approximately eight hundred dollars.  (Orr Aff. ¶¶ 5, 6.)  Orr then told Kafka she was concerned that the disagreement between AAA and Ben's would delay repairs and that she would rather keep the car at Ben's.  (Orr Aff. ¶ 7.)  Kafka responded that Orr's decision was "fine" and that she would follow up with Ben's.  (Kafka Aff. ¶ 9.)

Defendants have produced an affidavit from Teitelbaum in which he states that he never spoke to Orr at any point in the adjustment process.  (Teitelbaum Aff. ¶ 10.)  Defendants have also produced an affidavit from Kafka stating that she never told Orr that Ben's was overcharging or charging for unnecessary repairs.  (Kafka Aff. ¶ 11.)  Additionally, defendants have produced an affidavit from Orr stating: "No one from AAA ever said to me that Ben's was overcharging by $850 in labor costs, and no one from AAA ever told me that I 'must' take my car to George's."  (Orr Aff. ¶ 11.)  Orr also testified that "[a]t no time did [Kafka] or anyone else from AAA say anything negative about Ben's."  (Orr Aff. ¶ 13.)

Plaintiff counters with three affidavits.  In one, Berounsky states that "Teitelbaum informed Ben's that Patricia Kafka told

4

Orr that she would have to pay approximately $850.00 (falsely reporting the difference between Ben's price and AAA['s] price), should she choose to have her vehicle repaired at Ben's." (Berounsky Aff. ¶ 5.)  His affidavit also states that Orr relayed the same information to Ben's.  <u>Id.</u>  A second affidavit, from Ben's counsel, Christopher Ratté, states that Orr "conveyed substantially the same facts contained in Attorney Kalil's Writ of Summons."  (Ratté Aff. ¶ 3.)  Ratté further testified that Orr told him about a telephone call she had received from Kafka in which

> Kafka informed Ms. Orr that there was a discrepancy of approximately $850.00 between the repair costs determined by AAA and those determined by Ben's, and that because of that discrepancy, Ms. Orr must take her vehicle to George's Auto Body, or she would have to pay the disputed amount out of her own pocket.

<u>Id.</u>  Finally, in a third affidavit, another attorney for Ben's testified that in a conversation with Orr, she "relayed the facts contained in the Writ of Summons."  (Kalil Aff. ¶ 3.)

Orr, however, states in her affidavit that the allegations made in paragraphs 6 and 7 of the complaint, concerning statements made to her by defendants, are not true.  (Orr Aff. ¶¶ 11-12.)

**Discussion**

Ben's says that Kafka and Teitelbaum made false and defamatory statements about Ben's – that it was overcharging for repairs by eight hundred and fifty dollars and that Orr would have to pay the difference between Seacoast's estimate and Ben's bill out of her own pocket if she did not take the vehicle to a different body shop.  Ben's also alleges that Kafka and Teitelbaum stated that Ben's overcharges for repairs, and charges for unnecessary labor.  Defendants move for summary judgment on several grounds.  Specifically, they argue that: (1) Teitelbaum made no statement of any sort to Orr, and Kafka did not make the statements alleged in the complaint; (2) their statements were not defamatory in character; (3) even if their statements were defamatory, they were not published to a third party; (4) their statements were substantially true; (5) their statements were statements of opinion; and (6) a conditional privilege protects any statements they made.

The record as developed establishes that Teitelbaum said nothing to Orr.  That is undisputed.  He is not, therefore, liable for making defamatory statements to Orr about Ben's. Accordingly, Teitelbaum is entitled to summary judgment on Count III.

Turning to the statements allegedly made by Kafka to Orr, defendants have produced affidavits from both Orr and Kafka, the participants in and only witnesses to the conversation in which Kafka allegedly defamed Ben's.  Both affidavits deny that Kafka made any statements about Ben's overcharging, or any other negative statements about Ben's.

Ben's counters with affidavits from three individuals who report only what others told them about the conversation between Kafka and Orr.  In other words, Ben's relies solely on inadmissible hearsay evidence to posit a material factual dispute.  That is not sufficient.  See FED. R. CIV. P. 56(e) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."); see also SEC v. Ficken, 546 F.3d 45, 53 (1st Cir. 2008) (finding that in opposing summary judgment, "[h]earsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment") (internal quotations omitted).  Because plaintiff has produced no admissible evidence to counter the affidavits of Orr and Kafka, Ben's has not established the existence of a genuine dispute as to a material fact.

Ben's argues that the record contains a "genuine dispute as to what was said and how it was understood." Ben's argument, however, rests on the claim that, in 2008, Orr allegedly understood Kafka's statements to be negative and defamatory and now, in 2009, Orr "has changed her story." However, no admissible evidence in the record suggests that Orr understood Kafka's statements to be in any way negative or defamatory, in 2008 or in 2009. Consequently, there is no genuine issue of material fact.

Plaintiff also argues that "it is without dispute that Kafka spoke to Orr and therein misrepresented both the amount of the price discrepancy and the fact that Orr would have to be responsible for it." What is undisputed is that plaintiff has produced no admissible contrary evidence of what Kafka said to Orr, and there is no admissible evidence that Kafka made any defamatory statements to Orr. Presumably, the insurance contract between Orr and AAA provides coverage for reasonable costs of repair, and there is nothing inappropriate about an insurer informing its insured that repair can be done at one shop on a fully-covered basis, while at another shop, the insured might have to bear any costs above what the insurer deems reasonable (or, at a minimum, have a coverage dispute arise).

Plaintiff has failed to produce any admissible evidence to support a finding that Teitelbaum or Kafka published defamatory statements to Orr about Ben's.  That is, plaintiff has produced no admissible evidence that Teitelbaum ever said anything to Orr, and has produced no admissible evidence that Kafka made the defamatory statements alleged by Ben's in its complaint. Accordingly, Kafka and Teitelbaum are entitled to judgment as a matter of law on Ben's defamation claim.

## Conclusion

For the forgoing reasons, defendants' motion for summary judgment (document no. 16) is granted.  The clerk of the court shall enter judgment in accordance with this order and close the case.


**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

April 27, 2009

cc: Earl L. Kalil, Jr., Esq.
    Christopher E. Ratte, Esq.
    Joseph P. Geiger, Jr., Esq.
    Daniel E. Will, Esq.
    Leigh S. Willey, Esq.